The next matter, No. 24-1063, Captain Albert Brox et al. v. Woods Hole, Martha's Vyd & Nantucket S.S. Auth. et al. At this time, would Counsel for the Appellants please introduce himself on the record to begin. May it please the Court. Patrick Daubert on behalf of Captain Albert Brox et al., the Appellants. Your Honors, good morning. It's a privilege to be before you again. May I reserve two minutes for rebuttal? You may. Thank you. To paraphrase our principal brief at page 51, by taking judicial notice of disputed matters of fact, the District Court essentially blundered into the fact-finding fray as an advocate on behalf of COVID-19 vaccines. I don't want to cut you off, but do you agree that the reliance on the judicial notice that you're concerned about figures into the analysis only if we get to the heightened scrutiny? I would suggest that. Is it relevant to the question of whether it was generally applicable? It does play into that, whether we're on rational basis or strict scrutiny. No, I'm asking with respect to whether, because you relied on that finding to determine that it was rational. That it had a rational relationship. I see. Yes. So I would suggest that this mixture of advocacy and adjudication pervades the District Court's decision in its entirety. It claimed that the record on remand was different from the appellate record, when in fact the record was only enlarged due to its misuse of judicial notice by taking that dispositive position on contested matters, by resorting to sources of questionable accuracy, and by so mischaracterizing the materials judicially noticed, as to leave one with the unyielding belief that a clearly erroneous factual error had been committed. Similar to- Counsel, I apologize for doing this to you, but I have a couple of precursor questions.  And I promise you can get back to your argument. Please, Your Honor. As long as the Chief Judge allows you to. As to the four who were not terminated, the four plaintiffs, why has it not moved with respect to them? Are they not- I mean, is there some- is their fear that they were alleging earlier still a legitimate fear? Of getting boosted at this point? I'm not sure the record is clear at all on that. I would say there's still live participants to this controversy because they suffered adverse employment actions as a result of not complying with the mandate for those five or six weeks that they were out of compliance with it. They were suspended without pay. They're- But you're seeking a preliminary injunction. Yes, I'm seeking to have- The question is, is it moot as to those four for the relief you're seeking, which is a preliminary injunction? Well, the relief differs from the seven who were terminated to the four who weren't. I would like all of their employment statuses- He's asking first about the four. Right. So what I- the injunctive relief we seek as to the four is that their personnel record be restored to the stellar conditions that they were prior to being put on indefinite suspension without pay. I guess it's just to be precise, as to the four who were not terminated, are they- Is it the four who were not terminated or the seven who were not terminated? The four weren't terminated. The four who were not terminated. Does the vaccine mandate that was in existence impose any present obligation on them to get vaccinated? Not to my knowledge. Okay. I'm not sure the record- So you don't need an injunction to stop its enforcement against them, correct? Because you're just saying there's no indication that it applies to them. Only to restore their personnel records, correct. Okay. You need that on a preliminary injunction? Well, it's something that the court certainly could order as part of a preliminary injunction with- in tandem with the more sweeping relief as to reinstating the seven who were- Just as to the four, why do you need that at the preliminary injunction stage? It's a fair question, Your Honor. I'm not certain I have a satisfactory answer beyond we're seeking an injunction for the seven.  Can I ask you about the seven then? Yes. What's the status of the record or your understanding with respect to their eligibility for rehire? I genuinely do not know the answer there. They are not in communication with their former employers. No one has formally reached out to my knowledge to inquire about rehiring them, despite perhaps you've seen many news stories about- And is that what they are still seeking? To be rehired. Rehire or they want damages? They want to be rehired. And why wouldn't damages be sufficient at this point? It has nothing to do with mootness. I'm just asking in terms of, well, irreparable injury. Well, the irreparable injury stems less from the monetary impact. In fact, not at all from the monetary impact of losing their jobs. Collectively, they had some 214 years of working for the authority, their entire careers in most cases. The irreparable injury comes from the fact that they were coerced in their religious beliefs. That's happened already. And terminated. That's already happened. You want ongoing injunctive relief to stop. The typical case is if it's a constitutional harm, damages don't solve it because you're protecting them from the constitutional injury. Here the constitutional injury has, by your own account, happened. And I would argue that it's an ongoing injury when you've stood by your religious beliefs. But they're not subject to any more. There's no way we can enjoin. We don't need to enjoin the vaccine mandate because you just conceded that it won't apply to them anymore. Well, I'm not sure I conceded. You said that it doesn't require anybody to get a vaccine anymore. I don't know whether or not what the state of play is in terms of the authority's policy. Well, which, what are you saying? And the record doesn't reflect that either. This is a case that came from. You said standing here you can't say that any of these people would have to get a vaccine right now. Yeah. Because I don't know. So is there any evidence in the record that has come to us that they would have to get the vaccine? No. Okay. So then just going back to the seven, they've already been subjected to the injury. Yes. You want injunctive relief. The only injunction that you're seeking is to have them get their job back. As to that harm, they don't have the job, damages would be equivalent to that, wouldn't it? I think in the arena where the injury is irreparable in that it is to their constitutional right. Do you have any case in which a person who has already suffered the harm and now wants reinstatement can show irreparable harm? I believe Garvey versus the City of New York. Is that a case where they were terminated first? Where, I do reference that in my brief. Off the top of my head, I do recall that the judge in that case found that the vaccine mandates were arbitrary and capricious and ordered reinstatement with back pay of all the plaintiffs. So based on that holding, to the best of my knowledge standing here before you today, that is a case where you had terminated plaintiffs who got reinstated to their positions. You also have, is it Bacon versus Woodward, the Ninth Circuit? On a preliminary injunction? Good point. I don't believe Bacon versus Woodward was a preliminary injunction. Well, that's what you need because you need irreparable harm that would require the, right? Right. We do need irreparable harm and we have it based on the fact that their First Amendment rights were clearly transgressed as to both prongs of general applicability. Just because the injury took place now at this point years ago doesn't mean that that irreparable injury that they suffered, whether it was for even a minimum period of time as the Supreme Court has talked about in Elrod versus Burns or whether it's been extended and continued out throughout this entire duration, my view is that's not material to whether or not it existed. It did exist and so it does exist for purposes of seeking injunctive relief. We started this case with a temporary restraining order that was granted in Barnstable Superior Court that preserved the status quo and allowed, or prohibited rather, the Steamship Authority from terminating my clients. And then that TRO was vacated by the District Court. We're still appealing that, the act of vacating the TRO. So I get your point that we're now far down the line. Why don't you just focus on the damages? But I still... But doesn't our case in Together Employees against Brigham say that's what it is now? It can be remedied by damages? It's okay if you don't remember the case. I barely remember it even though I was on the panel. Thank you. I don't recall specifically that part of the holding from Together Employees. So I'm not much use to you on that question. My apologies. So what we said, the appellants are not required to perform or abstain from any action that violates their religious beliefs. It was not speech beliefs, for example. But same here, not requiring them to be vaccinated involuntarily. Instead, because they've refused to get vaccinated, they've been fired, the resulting loss of income undoubtedly harms them. But that harm is not irreparable. Well, I think there are plenty of cases cited in my briefs from other circuits that hold that... You've been cited to the Second Circuit for that proposition. But you've got cases from other circuits. From other circuits, Your Honor. I'm fairly certain it's beyond the Second Circuit where even the temporary coercion of religious beliefs is held to be irreparable harm, even though it's a lesser harm in terms of losing one's employment. But there absolutely are cases in my briefs that go there. And I know I'm being circular here. But where the harm has already occurred, how is preliminary injunctive relief going to cure that harm in a way that damages won't? It goes back to the length of time my clients had served the steamship authority. They spent their entire careers there. But damages can account for all of that. But procedurally, we're still in this limbo of the vacating the temporary restraining order and not having the injunction issue that would have restored their employment statuses way back when. So while damages... Counsel, let me... You continue to allude to the Barstool TRO. But that is a TRO. So even if it's a federal TRO or a state court TRO, it's a very limited period of time. So that expires. And here, the district judge held the preliminary injunction hearing. So that, I don't think that does you one way or the other. It doesn't benefit to your favor. It doesn't detriment. You had that. But that, again, it's a very limited remedy for that time being. The other question I have, and I just echo what Judge Howard and Judge Barrett have been saying, but I just briefly want to go back to the four who were not terminated. The issue of the reverberant alarm. And, again, over the years, I sat at the district bench. For over 15 years, I had preliminary injunctions. I had mostly political discrimination cases where people were either terminated. Sometimes they were not terminated. But with the reverberant alarm there, they were not terminated. And in my view, with these cases, you can move for summary judgment. You can move for expedited discovery. There are all these remedies. And you can, you know, whatever remedy you're seeking, and I've been hearing you for about 12, 13 minutes. Those are remedies. You prevail. You ask the court. Plus, you probably get attorney's fees also if you prevail. So, you know, I just can't see, you know, at least for those four, I do have an issue. Respectfully, we never had a hearing, Judge Helpe. But that being said, I would continue to just recite that procedurally this is where the case is postured. While time has passed, or we haven't, there's not even an answer to the complaint, we're still challenging the district court's decision as to the denial of injunctive relief. Yeah, you're appealing the denial of the request for preliminary injunction. That's right. Yeah, and so then you have to meet the standards for preliminary injunction, one of which is that you show irreparable harm. And I take your point. Your point is there's irreparable harm. Yes. Just because the reason they were fired had to do with a religious belief, and that alone is enough, notwithstanding that the vaccine mandate, there's no evidence to show that it would still apply to them as a bar. So they could be reinstated without getting vaccinated. I don't think the record reflects that. Well, the record doesn't have any indication that they couldn't. That's fair. Yeah. And the burden's on you at a preliminary injunction stage. But so are you saying that we should have perhaps, just to use an example, we should have submitted an affidavit about the plaintiff's efforts to get rehired and that they were stonewalled somewhere along the way or it wasn't possible? Counsel, we're dealing with a record, and what is up here is what we have. What you presented below or didn't present or, again, if we affirm the denial, the case is still down there. You have every available evidence of relief that is still possible. And, again, this doesn't terminate your case. Your basis for this being a live dispute as to the four was the concern they had about boosters being required. That's the sole thing that I saw in the record indicating how they might still be subject to the vaccine mandate. Yes. Okay. And that was a long time ago when they had that concern. There's no indication. Lots of time has passed. And you're being candid with us, which we appreciate. There's no indication that actually that turned out to be true. So the thing that's preventing them from getting the job, the seven now, is not the vaccine mandate. There's no indication that's what's preventing them. Nonetheless, you say they were terminated because of their refusal to get vaccinated because at that time they could not get the job. In fact, it's proved because they were terminated on that basis. The question is, does their desire to get reinstated when the vaccine mandate is not a bar any longer to their reinstatement, demand preliminary injunctive relief because there is no way to harm that? It's an irreparable harm that can only be satisfied by reinstating them. Or is the right way to think about it, damages will suffice to solve that problem because it can't protect them from the injury they've already suffered. There's no ongoing injury to protect them from. You say that that's wrong, that reinstatement would protect them from the ongoing injury of not being in the job and consequence of their religious beliefs. That's the nub of the matter, correct? I'd say that's fair, reinstatement with a strong rebuke of a policy such as this that gave all this discretion to one official to grant or deny on case-by-case basis religious exemptions or medical exemptions. That type of policy, it goes totally against general applicability and it's illuminated by their treatment of the comparator where you have, he requests his religious exemption, he's denied. He's a direct threat to others because he's unvaccinated. Then he requests a medical exemption. I appreciate it. Any further questions? Thank you, counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin? May it please the court. Good morning, your honors. Ryan Jazeera on behalf of the Steamship Authority and Janice Kenefick, the individual appellee. In response to the unprecedented and deadly COVID-19 pandemic, the Steamship Authority implemented a mandatory vaccination policy in early 2022. From the Steamship Authority's perspective, does that mandate require boosters? In the policy itself, yes, there's reference to boosters. I can't speak one way or another to the present status of that aspect of the policy. I'm living in the February 2022 timeframe and what the appellants did or didn't do at that period in time. The request is for ongoing relief, so we're trying to figure out whether you have a live controversy here. So the Steamship Authority has no position as to whether people would have to still get vaccinated to be there? It's my understanding, your honor, that that requirement may have lifted, but I don't know one way or another definitively and it's not stated in the record. So again, in terms of what happened in February of 2022 and what the appellants did not do, which is not get vaccinated, which was a term and condition of their employment at that period in time, that is clearly in the record. And they did not comply with the policy and were terminated as a result. And so the crux of this matter is for free exercise purposes on the likelihood of success, whether one time limited medical... Just so I'm understanding, you make an irreparable harm argument in your brief? Yes, your honor. And is that meant to be only as to the seven and not as to the four? It's meant to be as to all appellants. As to the four, how would damages solve that problem? What they're contending is we're subject to a vaccine mandate going forward. Are they or are they not? Well, your honor, what I would submit is the harm itself is what I focus on in the brief, which is the harm alleged here is an economic harm. It's whether the individual can keep their job or not. And that's under the relevant case law, that is an economic harm. We don't say that for constitutional harms. We say that for statutory ones, not constitutional harms. Right, but there is a distinction between, even for constitutional harms, I would submit, there's a distinction between forcing someone to do something, forcing someone to abstain from their religious practices, and presenting that individual with a choice, whether to get vaccinated or not. This is not a case like Roman Catholic diocese where the plaintiffs were prevented from attending religious services at church, thereby preventing them from their ability to partake in worship. This is a job requirement. So if the individual chooses not to comply with that job requirement, the consequence of that decision is economic. What's the difference if the policy, not this policy, but if a company had a policy that said you cannot attend the church that you are currently attending? You have to stop attending that church or give up your job. What is the difference? Well, in that situation, the employer is telling that person not to go to their church. Here, there's a job requirement. Don't exercise your religious beliefs. What's the difference? Well, the difference is there's a health and safety requirement that's baked into the sole purpose. But that doesn't go to reputable harm. It just goes to the merits. As to reputable harm. That's true, Your Honor. But I would point to the Together Employees decision, as well as the Cain v. de Blasio decision, the Second Circuit decision. They'll stand for that proposition. They support you potentially with respect to the seven. But with respect to the four, if you're not saying that if the mandate still applies to the four, I don't read Cain or those other cases to address that circumstance. Because that's just a person who's got an ongoing obligation to comply with what they contend is a restriction on their religious beliefs. I realize you say it's in the employment context, but I don't know of a case that says that when it's the state doing it, and it's a constitutional violation, that alone means it's not irreparable harm. Right. So I suppose our position is it's the choice being presented to the individual is whether to take the vaccine or not. If they choose not to, the consequence of that choice is the loss of employment. The loss of employment is an economic harm. That's not a constitutional harm. So that is the distinction. I know it might be a fine one, but that's the distinction I think that makes this case different from, for example, the Roman Catholic Diocese case, the Supreme Court's case, where that clearly was not an economic harm. That was literally preventing someone from going to church. But just to be clear, you're not taking the position before us that the vaccine mandate, given its reference to boosters, no longer applies? That's not in the record. I can't say one way or another as we stand here today. And so I guess pivoting back to the likelihood of success on the merits, and specifically the low decision, that's not a constitutional harm. That's not something that this Court decided two years ago. The relevant inquiry under the Free Exercise Clause is comparability. And really the crux of the appeal on that issue is the limited, time-limited medical exemption that was granted to Greg Manchester as compared to the permanent, indefinite religious exemptions that would have resulted from the appellant's decision. And as this Court held in low, the risks of, and as Judge Stearns correctly concluded, the risks of granting a limited, time-limited, rare medical exemption are not comparable to the risks associated with a much larger number of permanent exemptions. And again, under this Court's decision in low, where there are medical exemptions that are rarer and more time-limited, that's evidence of a lack of comparability under the Free Exercise Clause thus. And do we measure that from how it actually played out, or from kind of behind the veil, ex ante, how it would be reasonable to think it would play out? Because here, the record shows that, in fact, there were 13 religious requests and only one medical request, and that the medical request was time-limited, or granted, I guess, and that the medical request was time-limited and the 13 were permanent. But is that the relevant set of things to be thinking about when we're trying to figure out whether they're comparable? Or is the relevant thing, at the time they established the mandate, was there any reason to think that religious exemptions would outnumber medical ones, and that the medical ones would be time-limited rather than permanent? Yes, so I think the way I'd answer that, Your Honor, is for purposes of neutrality, the first part of the general applicability, or the first part of this inquiry as to whether a rational basis review applies, that's more of a subjective question. That's more of an objective analysis under the case law. When it comes to comparability, I would say that's more of an objective, holistic review of the circumstances that occurred. But I'm asking, is that objective analysis supposed to occur at the time the mandate is established, or after it's played out? I think it's going to be after it's played out. But why is that of any relevance in trying to figure out whether the mandate was discriminatory as to religion, if objectively they had no reason to think medical ones were not comparable to religious ones? I think it comes down to the interests that are at play here, which are to reduce the spread of COVID-19 in the workplace and to protect the health and safety. What objective basis did they have when they established the mandate for thinking that medical ones would be time-limited and that medical ones would be less frequent than religious ones? I don't know if that's in the record, Your Honor. I guess what I'm asking is if it's not in the record, why isn't that a problem for you? Why does it matter what happened after the mandate was issued? Sorry, Your Honor. What is in the record is the medical exemption is only applicable if there's an objective assessment from a physician and that physician indicates that the individual is medically contraindicated. So that means, I would assert that that implies that there is definitely some parameters. There is an objective assessment and medical providers know it must be submitted. So I think there's an implication, at least, that those parameters would lead to time limits, would lead to there being a less likelihood of more of those medical exemptions being than religious ones. Why? It would show that there would be less medical ones than there otherwise might be if it was a looser standard for medical. But why would it show there would be fewer medical than religious ones? Well, I would assert that it's a rarer circumstance where somebody would be medically contraindicated from being able to take a vaccine versus there being no health effects from taking a vaccine. I can't say that that has 100% support in the record we have here. Does it have any support in the record? Maybe in some of the CDC data that's been cited. But I believe that there is a very small percentage of the population that has vulnerability from the health effects from the vaccine as compared to potentially limitless number of people who could bring religious exemptions. That's right, Your Honor. And that's how it played out in fact here, where we have in our record 13 religious exemptions that were all submitted for an indefinite time period versus one medical exemption for a single three-month time period. And the burden of showing that they're not comparable is unplaintive? Yes, Your Honor. As would the burden be of establishing the likelihood of success on the merit in addition to the three other prongs of the preliminary injunction test, including the irreparable harm prong that we've talked about. I would also say I think my brother referenced the individualized exemptions argument that's been raised in the briefs. First, I think Judge Stearns correctly noted that that argument had been waived. So what would that mean on appeal if it's waived under the district court rules? Do we treat it as waived or forfeited? I would assert that it has been waived because I believe this court has also held that arguments raised for the first time in a reply brief are waived. And that's what happened in the district court proceedings. So I think a similar analysis would apply at this court. But even if the merits were considered, I just want to point out, which is also addressed in the briefs, but the Fulton case relied upon by the appellants is distinguishable given that... If the merits were considered, what standard would apply? Strict scrutiny or rational basis? I just want to know where you're going here. So the first sort of prong of the general applicability analysis, whether the policy permitted individualized exemptions. Our position is rational basis review applies because there is no system for individualized exemptions. Because the Fulton case, which is what the appellants rely upon, in that case the relevant decision maker was granted sole discretion to grant or deny the exemption requests that were at issue in that case. We don't have that in this case. We have here two exemptions, medical exemption, which is based solely on objective criteria from a medical provider based on a medical vulnerability. And number two, a religious exemption, which is based on the test, the familiar test under Chapter 151B in Title VII, which is whether the individual can perform the essential functions of their job with a reasonable accommodation that doesn't result in an undue hardship to the employer. So the decision makers at the authority evaluating these exemptions were operating within these frameworks for both the medical exemption and the religious exemption. And that is distinguishable from Fulton, which just granted sole discretion to the commissioner that was making the decisions in that case. And I also want to note, in terms of the interests involved here, because in the appellant's briefs there's some discussion about the fact that the only interest asserted for purposes now, I'm now talking about the second element of the general applicability analysis, whether the appellant is going to be exempted or not. And I would assert that the authority prohibited religious conduct while permitting secular conduct that undermined the authority's interest in a similar fashion. I would assert that it's not simply preventing transmission of COVID-19 that is the only asserted interest found in the record. There is also the more general interest of protecting health and safety. That is, I would say, has more than ample support in both Janice Kenefick's declaration, which was submitted in the underlying proceedings, as well as the policy itself and the letters that were submitted to each of the plaintiffs when they were denied their religious exemption requests, which state that granting them the exemptions would unreasonably risk their health and safety as well as the health and safety of employees and customers at the Steamship Authority. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the appellants please reintroduce himself on the record to begin. He has a two-minute rebuttal. Patrick Daubert again on behalf of the appellants. Just briefly as to my brother's last line of reasoning, the policy, its asserted interest comes front and center. The asserted interest is preventing the spread. In the medical exemption provision, there is talk about protecting the health of the individual employees, but when you're weighing an undue burden determination, it's weighed against what the asserted interest is, not an asserted interest from the exemption. Just as fairly as someone asserting a religious exemption or requesting one, the harm they're worried about is spiritual. So it's not a religious exemption, it's a spiritual exemption. I would also suggest that the policy document itself with respect to undue burdens, it says that an undue burden analysis needs to apply to both types of exemptions. And because Kennefick is able to go and just give the green light to a medical exemption once she gets the right piece of paper, but instead when she gets a religious exemption request, she takes it through the paces and determines these are all medical exemptions. I would just address a take-it-there argument is that's a distinction between the two, but they're still not comparable because of the points made in low, which are the time-limited nature of the medical exemption, and the aggregation that was referred to in low. The Second Circuit does the same thing, which is that there's more of them. So as the record turns out, there are 13 to 1, and it is time-limited versus permanent. And the burden is on you to show that they're not comparable. So how do you address that? So in low, they wanted to reach a 90% threshold of vaccinated employees, and that's what the main CDC determined was going to be sufficient in order to quell the spread of COVID. Of the 2021 Steamship Authority employee roles, there were some 789 employees. But if we take the interest here, and I know you dispute this because you say it's prevented, that has its own problems, but if we take the interest as limiting the spread, which it's not, and they contend that it is, if we took it as limited, maybe that's wrong, but just for purposes of this aspect of the analysis, if the interest were in limiting the spread of the virus, what is the argument for suggesting that they're comparable? Well, you actually have both parties submitting documents which stand for the proposition that the vaccines cannot limit the spread. And that CDC fact sheet, which your Honor referenced in his earlier opinion, if you read it carefully, it says of the then-predominant circulating variants that breakthrough infections from both Omicron and Delta are possible, and those people who suffer breakthrough infections are not. And those people who suffer breakthrough infections can, in fact, transmit the virus to others. So I guess my answer to that would be that... Just so I follow, is the idea that if there were good evidence at the time of setting the vaccination policy that there would be 500 requests for religious exemptions and no requests except for maybe one very time-limited medical exemption, they still would be comparable to each other because the vaccine mandate is just going to be ineffective no matter what. Is that the argument? Or is there a different argument? I think if you do boil it all the way down, this policy is totally indefensible. Do you have any argument other than that as to comparability? Not at this time, Judge. But if I may just close on, I want to come back to the irreparable harm that we were discussing during my opening argument. There's the Doster v. Kendall case from the Sixth Circuit decided back in 2022. It's referenced on page 42 of my principal brief. And the whole thing goes, affirming the district court's issuance of an injunction against the Air Force's vaccine mandate, writing, This intangible injury, the coerced violation of religious beliefs, is irreparable even when the coercion comes from such lesser forms as the threatened loss of a civilian job or the loss of the ability to play a college sport. That's the threatened loss. This is after the loss has occurred. Is it still irreparable harm when you're seeking to now get the reinstatement if you were not subject to the mandate going forward? Right. And so, again, I point back to City of Garvey v. New York where there is some precedent for people being terminated and then the court using its powers to restore their employment statuses. And finally, as to the four of the seven, I think we just heard from my brother that the vaccine mandate may still be in effect. So the fact is, I would argue, that their denial of their constitutional rights continues every single day and it's subject to the arbitrary whims of an employer that we've seen plays it fast and loose, in our opinion, Judge. Thank you.  Thank you, counsel. That concludes argument in this case.